IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

RONALD D. STOUT,                )
                                )
    Plaintiff,                  )
                                )
v.                              )   Case No. CIV-16-485-BMJ
                                )
NANCY A. BERRYHILL, Acting      )
Commissioner of the Social Security )
Administration,                 )
                                )
    Defendant.[1]               )

# MEMORANDUM OPINION AND ORDER

Plaintiff, Ronald D. Stout, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's final decision finding he was not disabled under the Social Security Act. The parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. *See* 28 U.S.C. § 636(c). The Commissioner has filed the Administrative Record (AR), and both parties have briefed their respective positions. For the reasons stated below, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

## I.  Procedural Background

In March 2012, Plaintiff protectively filed an application for disability insurance benefits. AR 198-201, 244. The Social Security Administration (SSA) denied the application initially and on reconsideration. AR 106-109, 113-115. Following two administrative hearings, an Administrative Law Judge (ALJ) issued an unfavorable decision dated August 18, 2014. AR 16-29. The Appeals Council denied Plaintiff's request for review on April 5, 2016. AR 1-5.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court substitutes Nancy A. Berryhill, Acting Commissioner of Social Security Administration, as the proper Defendant in this action.

Therefore, the ALJ's decision constitutes the final decision of the Commissioner. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Plaintiff timely commenced this action for judicial review. *See* Compl. [Doc. No. 1] (filed May 10, 2016).

## II.    The ALJ's Decision

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining process); *see also* 20 C.F.R. § 404.1520. The ALJ first determined that Plaintiff meets the insured status requirements of the Act through December 31, 2016, and has not not engaged in substantial gainful activity since the alleged onset date, October 30, 2010. AR 16, 18.[2]

At step two, the ALJ determined that Plaintiff has the following severe impairment: degenerative joint disease of the right knee. *Id*. The ALJ further found that additional impairments alleged by Plaintiff including left arm pain, right hand carpal tunnel syndrome and bullous dermatosis are not supported by the medical evidence and, therefore, are not severe. *Id*. At step three, the ALJ found that Plaintiff's impairment does not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. AR 18-19.

The ALJ next determined Plaintiff's residual functional capacity (RFC). The ALJ concluded Plaintiff could perform light work with additional physical limitations. AR 19.[3]

At step four, the ALJ found that Plaintiff could not perform his past relevant work as a lineman because that work requires an exertional level greater than the ALJ's RFC determination. AR 23. At step five, relying on the testimony of a vocational expert (VE), the ALJ concluded that

---

[2] The ALJ stated in his decision that "[a]t the hearing, Mr. Stout requested to amend the alleged onset date to December 24, 2011" but he used the onset date of October 30, 2010, when making his step-one finding. AR 16, 18.

[3] *See* 20 C.F.R. § 404.1567(b) (setting forth requirements for light work).

2

Plaintiff can perform other work that exists in significant numbers in the national economy. AR 24. The ALJ identified Cashier II as a representative occupation. *Id*. The ALJ concluded, therefore, that Plaintiff was not disabled under the terms of the Social Security Act. *Id*.

### III.  Issue Presented for Judicial Review

Plaintiff seeks judicial review raising a single claim of error: the ALJ "erroneously ignored and rejected Dr. Chaudry's opinion regarding [Plaintiff's] work-related limitations." *See* Pl.'s Brf. at p. 6. Dr. Chaudry is a non-treating, consultative examiner (CE) who conducted an examination of Plaintiff on January 10, 2014, and gave an opinion as to Plaintiff's functional limitations. AR 416-428. Those functional limitations are at odds with the ALJ's RFC determination. Because the ALJ did not address the weight given to Dr. Chaudry's opinion or set forth any reasons for rejecting that opinion, Plaintiff contends a remand is required.

The Commissioner concedes the ALJ did not properly address Dr. Chaudry's opinion. *See* Def.'s Brf. [Doc. No. 18] at pp. 7-8 (stating that "the ALJ assessed an RFC that conflicted with Dr. Chaudry's opined limitations . . . [and] [t]hus the ALJ should have explained why Dr. Chaudry's opinion was not adopted" (*citing* SSR 96-8p)).[4] Nonetheless, the Commissioner contends any error is harmless. The Commissioner points to the ALJ's reliance on the opinion of Dr. Kendrick, the medical examiner (ME),[5] who provided his opinion testimony at the hearing before the ALJ. The Commissioner argues that because "the ALJ's decision gave great weight to the opinion of Dr. Kendrick – who explicitly disavowed Dr. Chaudry's opinion when rendering

---

[4] SSR 96-8p provides in pertinent part: "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id*., 1996 WL 374184 at *7.

[5] The hearing transcript phonetically identifies the ME as Dr. Vernon Hendrix, *see* AR 67, but the ALJ's decision identifies the ME as Ronald Kendrick, M.D, *see* AR 20. Consistent with the ALJ's decision, the Court refers to the ME as Dr. Kendrick.

3

his opinion – it is implicit in the ALJ's decision that he did not accord weight to Dr. Chaudry's opinion." *See* Def.'s Brf. at p. 10.

In his Reply [Doc. No. 19], Plaintiff claims that the Commissioner impermissibly offers post-hoc justifications to salvage the ALJ's error. Plaintiff additionally points to objective medical evidence in the record that supports Dr. Chaudry's opinion as to Plaintiff's functional limitations.

## IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

Plaintiff bears the burden of proof at steps one through four of the sequential evaluation process to establish a prima facie case of disability. *Wells v. Colvin*, 727 F.3d 1061, 1064 n. 1 (10th Cir. 2013). If Plaintiff meets this burden, the burden of proof shifts to the Commissioner at

4

step five to show that Plaintiff retains a sufficient RFC to perform other work that exists in significant numbers in the national economy. *Id*.

V. **Analysis**

Analysis of Plaintiff's claim of error requires a comparison of the functional limitations set forth in the ALJ's RFC determination, Dr. Chaudry's functional assessment and Dr. Kendrick's hearing testimony, summarized as follows:

| RFC | Dr. Chaudry (CE) | Dr. Kendrick (ME) |
|---|---|---|
| Lift, carry, push, pull 20 pounds occasionally and 10 pounds frequently | Lift 20 pounds occasionally, carry 10 pounds occasionally | Lift 25 pounds occasionally and 10 pounds frequently |
| Stand or walk 4 hours in an 8-hour day | Stand 2 hours in an 8-hour day; walk 2 hours in an 8-hour day | Walk 4 hours in an 8-hour day |
| Sit 4-8 hours in an 8-hour day, with normal breaks | Sit 3 hours in an 8-hour day | Sit 6 hours in an 8-hour day |
| Bend or stoop occasionally | Balance stoop and crouch occasionally | Bend or stoop frequently |
| Avoid kneeling, crouching or crawling | Crouch or kneel occasionally and never crawl | Cannot kneel or crawl |

*See* AR 19 (ALJ's RFC); AR 419-428 (Dr. Chaudry's Medical Source Statement); AR 73-77 (Dr. Kendrick's hearing testimony).

In addition to these limitations, Dr. Chaudry opined that Plaintiff can only *occasionally* reach, handle and finger. AR 421. These additional limitations are significant. The Cashier II job identified by the ALJ at step five requires *frequent* reaching, handling and fingering. *See* Dictionary of Occupational Titles (DOT) § 211.462-010, 1991 WL 671840.

A. **The ALJ's Summary of the Medical Evidence**

In his decision, the ALJ stated: "I have considered all evidence in the record even if not specifically cited in this decision, and I have also considered opinion evidence in accordance with the requirements of 20 C.F.R. [§] 404.1527 and SSRS 96-2p, 96-5p, 96-6p and 06-3p." AR 19.

5

The ALJ included a summary of Dr. Kendrick's expert testimony reciting the functional limitations set forth above. AR 20.[6] The ALJ then followed with a summary of the medical evidence. AR 20-22. He included in that summary the following:

- On December 2, 2010, Plaintiff underwent arthroscopic surgery of the right knee "with bone awls, and open excision of popliteal cyst." T.H. Boring, M.D. made surgical findings including "acute and chronic synovitis throughout the knee." During follow-up treatment, Plaintiff reported "pressure in the knee with throbbing, popping and grinding." (AR 20-21).

- On June 9, 2012, Brad Liston, D.O., completed a physical consultative evaluation and assessed Plaintiff with "chronic right knee pain, and chronic left elbow pain." (AR 21)

- On December 5, 2012 and January 2, 2013, examinations of Plaintiff by Robert B. Macnack, M.D., revealed decreased range of motion in the left elbow, tenderness in the left elbow, limited range of motion in the right knee, significant swelling in the right knee as compared to the left, and mild to moderate muscle wasting of the quadriceps. (AR 21)

- On January 10, 2014, S.A. Chaudry, M.D. conducted a physical consultative examination and opined that Plaintiff "can sit 35 minutes at a time, stand 35 minutes and walk 30 minutes at a time." Dr. Chaudry's impression was osteoarthritis, right knee and left elbow." (AR 21)

---

[6] The ALJ's summary of Dr. Kendrick's hearing testimony includes both variances and omissions with respect to Plaintiff's functional limitations. *Compare* AR 20 with AR 73, 75. The Court further notes in this regard that the hearing transcript is replete with references to "[phonetic]" making the testimony incomplete in places. For example, the testimony reads as follows with respect to Plaintiff's limitations:

  Q.   And what would those limitations be?

  A.   I'd place him somewhere between light and sedentary, lifting 25 occasionally, 10 pounds frequently, 10 [phonetic] – walking four out of eight hours, sitting six out of eight hours. His posturals of bending and stooping could be done frequently, but kneeling and crawling – even less than occasional [phonetic] would remain [phonetic].

AR 73. The ALJ's summary of Dr. Kendrick's testimony states that Dr. Kendrick found Plaintiff could stand four hours in an eight-hour workday. But a review of the hearing testimony includes no such reference. Although the "[phonetic]" insertion may have been a reference to standing, it is impossible to make that determination from the hearing transcript. The ALJ's opinion, therefore, fails to account for the evidence relied upon for the RFC standing limitation.

- On June 28, 2012, James Metcalf, M.D., a non-examining medical consultant opined that Plaintiff's impairments are not severe. Similarly, on November 2, 2012, Luther Woodcock, M.D., also a non-examining medical consultant, opined that Plaintiff's physical impairments are not severe. (AR 22).

Following this summary of the medical evidence, the ALJ found:

The objective evidence in this case supports the above finding that Mr. Stout can perform the above described light work limitations. *There is no objective medical evidence regarding his right knee pain.* Although physical examinations show reduced range of motion in his right knee and left elbow this would not prevent Mr. Stout from peform [sic] light work activity. Thus, although the evidence does show some limitation, she [sic] would be able to perform within the above residual functional capacity.

AR 22 (emphasis added). The ALJ's finding that no objective evidence exists regarding Plaintiff's right knee pain is directly contradicted by the ALJ's own summary of the medical record where he notes Plaintiff's right knee surgery and subsequent issues with significant swelling in the right knee.[7]

### B. The ALJ's Weighing of the Medical Opinion Evidence

The ALJ next addressed the medical opinion evidence. He gave "no weight" to the opinions of the non-examining medical consultants, Drs. Metcalf and Woodcock, who both opined that Plaintiff's physical impairments were not severe. AR 23. The ALJ gave "great weight" to the opinion of Dr. Kendrick, the medical expert. The ALJ stated: "Dr. Kendrick's opinion is consistent with and well supported by the evidence in this case and I give his opinion great weight."

---

[7] In addition, the ALJ's summary of Dr. Chaudry's consultative evaluation includes a reference to "painful range of flexion and extension with joint tenderness" upon examination of Plaintiff's right knee. AR 21.

7

*Id*. The ALJ did not explain, however, why he included certain limitations in the RFC that were more restrictive than those found by Dr. Kendrick.[8]

### 1. The ALJ's Failure to Address the Weight Given to Dr. Chaudry's Opinion Constitutes Reversible Error

As the Commissioner concedes, the ALJ included a summary of portions of Dr. Chaudry's consultative evaluation (omitting any reference to the functional assessments), but wholly failed to address the weight given to Dr. Chaudry's opinion. The ALJ's omission constitutes error. *See supra*, footnote 4; *see also Doyal*, 331 F.3d at 764 (an ALJ is required to consider all medical opinions and must provide specific, legitimate reasons for rejecting medical opinions, including those from non-treating physicians).[9] Dr. Chaudry's opinion includes limitations more restrictive than those found by Dr. Kendrick. The ALJ's finding that Dr. Kendrick's opinion is "consistent with and well supported by the evidence" fails to account for the inconsistent opinion of Dr. Chaudry.

### 2. Post-Hoc Justifications Offered by the Commissioner are Improper and Must be Rejected

The Commissioner's attempt to salvage this error through post-hoc justifications is unavailing. The Commissioner points to hearing testimony where Dr. Kendrick stated that he disagreed with Dr. Chaudry's findings. AR 74.

Had the ALJ actually discussed Dr. Kendrick's hearing testimony in his decision, that might have been sufficient. But the ALJ's decision is wholly silent with respect to Dr. Kendrick's

---

[8] For example, Dr. Kendrick opined that Plaintiff could bend or stoop frequently, while the ALJ's RFC provides for occasional bending and stooping. *See* discussion, supra.

[9] The ALJ's omission is particularly troublesome as he specifically addressed the weight given to the other medical opinions in the record addressing Plaintiff's functional limitations. *See* AR 23.

testimony regarding Dr. Chaudry's opinion. *Cf. Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) ("the ALJ did not reject Dr. Reddy's report because . . . Dr. Owoso's opinion outweighed it – he simply did not discuss all of Dr. Reddy's diagnoses or explain how he reached his conclusions"). It is well established that judicial review is limited to the reasons stated in the ALJ's decision and this Court cannot usurp the agency's role of weighing the evidence in the first instance. *See Carpenter*, 537 F.3d at 1267; *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007); *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004).

Moreover, Dr. Kendrick specifically testified only with respect to two of Dr. Chaudry's opinions. First, he disagreed with Dr. Chaudry's opinion that Plaintiff could only sit for three hours in an eight-hour workday. Dr. Kendrick stated: "If you have a sore knee you can sit all day." AR 75. But this statement is inconsistent with Dr. Kendrick's own finding that Plaintiff could sit for only six hours in an eight-hour work day and the ALJ's RFC that included a more restrictive sitting limitation than Dr. Kendrick, limiting sitting to four–to-eight hours in an eight-hour day.[10]

Second, Dr. Kendrick disagreed with Dr. Chaudry's opinion that Plaintiff could only use his upper extremities occasionally. Dr. Kendrick testified, "examinations of [Plaintiff's] upper extremities are basically normal." AR 75. Dr. Kendrick's testimony fails to account for Dr. Chaudry's observations regarding some difficulties Plaintiff has with grasping and use of his left hand. AR 416, 418. Dr. Chaudry's examination and other medical evidence also supports

---

[10] And, as Plaintiff points out, Dr. Kendrick did not consider Plaintiff's subjective complaints when offering his opinion that a person with a sore knee can "sit all day." *See Thompson v. Sullivan*, 987 F.2d 1482, 1488-89 (10th Cir. 1993) (recognizing pain as a non-exertional impairment and discussing factors that must be considered when objective medical evidence establishes the existence of a pain-producing impairment).

9

abnormal extension of Plaintiff's left elbow. AR 418, 426 (Dr. Chaudry); 390, 392 (Dr. Stout); and 401-402 (Dr. Macnack).

Additionally, Dr. Kendrick provided no testimony regarding specific reasons for rejecting Dr. Chaudry's more restrictive limitations on carrying, standing and walking.[11] Moreover, the ALJ failed to address why he gave greater weight to Dr. Kendrick – who never examined Plaintiff. AR 71. The opinion of Dr. Chaudry, as an examining medical source opinion, was "presumptively entitled to more weight than [Dr. Kendrick's] opinion derived from a review of the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012); *see also* 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."). For all these reasons, the Commissioner's post-hoc justifications fail. *See Garcia v. Barnhart*, 188 F. App'x 760, 767 (10th Cir. 2006) (post-hoc "justifications cannot succeed unless they are so conclusive that no reasonable ALJ could have resolved the disputed matter in any other way").

### 3. Functional Limitations Set Forth in Dr. Chaudry's Opinion are Inconsistent with the DOT Requirements of the Job Identified by the ALJ at Step Five

Finally, the ALJ's failure to address reasons for rejecting Dr. Chaudry's limitations to occasional reaching, handling and fingering – which, as noted above, are limitations inconsistent with the DOT requirements for the Cashier II job, is problematic.[12] An ALJ may not "pick and

---

[11] Dr. Chaudry's assessment of Plaintiff's functional limitations would preclude Plaintiff from performing light which requires the ability to frequently lift and carry objects weighing up to 10 pounds and the ability to stand or walk "off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251 at **5-6; *see also* supra, footnote 3.

[12] The VE testified that adding a limitation of "frequent use of handling bilaterally" would not eliminate the Cashier II job, but that a limitation to occasional use of the hands would eliminate that job. AR 85.

choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). Moreover, an "ALJ is obligated to explain conflicts between a VE's testimony and a job description in the DOT, however, and therefore must elicit enough vocational evidence for this court to determine whether there is a conflict."). On remand, therefore, the ALJ should also consider this matter.

**VI.    Conclusion**

For the reasons set forth, the Court reverses the decision of the Commissioner and remands the matter for further proceedings consistent with this Memorandum Opinion and Order.

ENTERED this 1st day of February, 2017.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE